DAVID J. VAN HAVERMAAT, Cal. Bar No. 175761
Email: vanhavermaatd@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
William P. Hicks, Associate Regional Director
John W. Berry, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| vs. | |
| JOHN THORNES, | |
| Defendant, | |
| and | |
| CHRISTOPHER BURNELL; KYLE LARICK; and DOREEN THORNES, | |
| Relief Defendants. | |

Plaintiff Securities and Exchange Commission ("SEC") alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa.  The defendant has, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts,

practices and courses of business alleged in this complaint.

2.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district, and the defendant and the relief defendants reside in the district.

## SUMMARY

3.     This case involves repeated misappropriation of funds by John T. Thornes ("Thornes"), the former owner of a registered broker-dealer and investment adviser firm, Thornes & Associates, Inc. Investment Securities (the "Firm"), from two trust brokerage accounts at the Firm.  From December 2010 through January 2013, Thornes misappropriated a combined total of $4.4 million from the Shultz Trust account, for which he was the trustee of the trust (as well as the registered representative on the trust's brokerage account), and the Harbison Scholarship Trust ("Harbison Trust") account, a non-discretionary brokerage account for which he was the registered representative, and for which his mother, relief defendant Doreen K. Thornes, ("Doreen") was the trustee of the trust.

4.     Thornes exercised control over the Shultz Trust brokerage account in his capacity as the trustee of that trust.  With respect to the Harbison Trust brokerage account, Thornes usurped control from his mother and engaged in unauthorized trading in the account as the registered representative.  Thornes used this control to misappropriate and transfer more than $4.1 million from these accounts to his friends, relief defendants Christopher L. Burnell ("Burnell") and Kyle W. Larick ("Larick"), for improper and unauthorized purposes, including $2.9 million to Burnell for, among other things, payment of Burnell's gambling debts and tax liens, and more than $1.2 million to Larick for, among other things, the purchase of a vacation home and a luxury vehicle.  As a result of Thornes' actions, the two accounts lost substantial portions of their value and incurred unnecessary margin interest and brokerage fees.

In addition, Thornes caused the Harbison Trust account to pay more than $85,000 in unauthorized and excessive trustee fees to Doreen.

5.    Through this Complaint, the SEC seeks a permanent injunction prohibiting Thornes from future federal securities laws violations, disgorgement with prejudgment interest of all ill-gotten gains, including the monies obtained by the relief defendants via Thornes' fraudulent conduct, and civil penalties against Thornes.

## DEFENDANT

6.    **John T. Thornes,** age 47, resides in Redlands, California.  Thornes was formerly the President, Chief Compliance Officer, Director, and Secretary of the Firm, and he worked there throughout the relevant period.

## RELIEF DEFENDANTS

7.    **Kyle W. Larick**, age 45, resides in Redlands, California.  Larick is Thornes' longtime close friend.

8.    **Christopher L. Burnell**, age 43, resides in Highland, California. Burnell was a friend and business associate of Larick, who introduced Burnell to Thornes in the fall of 2010.

9.    **Doreen K. Thornes**, age 83, resides in Rialto, California.  Doreen is Thornes' mother.  She was listed as a director of the Firm throughout the relevant period.

## RELEVANT ENTITY

10.    **Thornes & Associates, Inc. Investment Securities (doing business as Thornes & Associates, Inc.)**, based in Redlands, California, was registered with the SEC as a broker-dealer from August 1996 to November 2013.  The Firm was also registered as an investment adviser with the State of California from December 2001 to September 2013.  Since approximately 2004, Thornes was the sole owner of the Firm.  The Financial Industry Regulatory Association ("FINRA") filed an administrative action against Thornes and the Firm in May 2013.  On July 18, 2013, the Firm offered to settle the matter on terms that included the Firm's expulsion from

FINRA membership.  As of that date, the Firm's accounts were taken over by another broker-dealer/investment adviser.

## THE FRAUDULENT SCHEME

### A.  Thornes' Misappropriation From The Shultz Trust Account

11.  From August 1996 until May 2013, Thornes was the registered representative for the brokerage account of the Shultz Trust, which had been established for the health, support and maintenance of an 80-year old homemaker.  The beneficiary, a dementia patient, has lived at home with 24-hour nursing care since April 2007.  In May 2007, Thornes replaced the beneficiary as trustee, giving him control over the Shultz Trust brokerage account.

12.  From August 1996 to February 2012, the investment objective/risk tolerance for the Shultz Trust account was listed as "Conservative Growth & Income." As of March 2011, about 76% of the Shultz Trust account's assets were held in mutual fund shares, and 19% in fixed income securities.  The Firm moved to a new clearing broker in February 2012, at which time Thornes designated the account's investment objective as "Balanced/Conservative growth."  Thornes revised the designation in June 2012 to "Balanced Growth," with a "Low Risk" tolerance.

13.  From April 2011 to March 2013, Thornes abused his position as trustee for the Shultz Trust by misappropriating the trust's funds, improperly transferring a total of $1.7 million from the Shultz Trust to his friend, Burnell.

14.  To facilitate the transfer of funds out of the Shultz Trust account, Thornes sold securities from the account in at least 25 separate trades.

15.  Thornes transferred money from the Shultz Trust to Burnell for a variety of purposes unrelated to the purpose of the trust, including satisfying Burnell's tax lien liability, purportedly chartering a private jet to transport Burnell's supposedly sick wife for medical care, and to pay for Burnell's gambling and/or gambling debts at a nearby casino.

16.  Burnell did not have a legitimate claim to the funds that Thornes

transferred to him from the Shultz Trust account. Thornes knew or was reckless in not knowing that none of the payments to Burnell advanced the purposes of the trust, which was established for Shultz's health, support, and maintenance, and that Burnell did not have a legitimate claim to the funds. Neither Burnell nor Thornes ever repaid the funds that Thornes misappropriated from the Shultz Trust account.

17. Using his control over the Shultz Trust as the trustee, Thornes converted the Shultz Trust brokerage account to a margin account to obtain margin funds. Subsequently, he sold securities in the account to generate additional funds to avoid a margin call and to cover additional transfers to Burnell. Thornes' trading on margin was inconsistent with the low risk tolerance for the account.

18. Between April 2011 and March 2013, Thornes caused the Shultz Trust to pay the Firm margin interest in the amount of $49,000 and brokerage commissions of $11,422. As the sole owner of the Firm, Thornes benefited from these payments.

19. As a result of Thornes' actions, the Shultz Trust account balance was depleted from over $2.08 million in March 2011 to approximately $384,000 as of April 30, 2013.

**B.    Thornes' Misappropriation From The Harbison Trust Account**

20. From August 1996 until May 2013, Thornes was the registered representative for the Harbison Trust account, a non-discretionary brokerage account held at the Firm. The Harbison Trust was created by the will of a Thornes family friend who died in 1993. The purpose of the trust was to fund college scholarships for local high school graduates, with the recipients to be selected by a committee designated by the trustee. The will named as the initial trustee Thornes' father, who was succeeded in 1996 by Thornes' mother, Doreen. Because Doreen had no training in finance, accounting, or the duties of a trustee, she relied upon Thornes to make all decisions related to the Harbison Trust account, including all decisions regarding trading of securities in the Harbison Trust account.

21. From August 1996 through January 2012, the investment objective/risk

tolerance of the Harbison Trust account was designated as "Long Term Growth & Income."  Thornes changed the designation in February 2012 to "Preservation of Principal/Income," and in June 2012 to "Preservation of Principal/Income," with a "Minimal Risk" tolerance.  As of November 2010, the Harbison Trust account value was $3.05 million.

22.    From December 2010 to March 2013, Thornes misappropriated funds from the Harbison Trust account, transferring $1.2 million in twenty-two separate transfers to Burnell.  Thornes periodically had Doreen sign blank checks, through which Thornes transferred funds to the trust's bank account, from which he obtained cashier's checks made out to Burnell.  To make the Harbison Trust account's assets available for transfer, Thornes sold securities from the account in at least 25 separate unauthorized trades.

23.    Thornes transferred substantial funds from the Harbison Trust account to Burnell for a variety of purposes unrelated to the purpose of the trust, including purported "bridge loans" to Burnell, the payment of Burnell's tax liens, and other personal expenses of Burnell.  Thornes knew or was reckless in not knowing that none of the payments to Burnell advanced the purposes of the Harbison Trust.

24.    Thornes also transferred more than $1.2 million from the Harbison Trust account to Larick in three separate disbursements in late 2010 and early 2011.  Of those funds, $800,000 was used by Larick for the purchase of a vacation home in Big Bear, California, and $93,000 was used for a luxury vehicle for Larick.

25.    Neither Burnell nor Larick had a legitimate claim to the funds that Thornes transferred to them from the Harbison Trust account.  Thornes knew or was reckless in not knowing that none of the transfers to Burnell or Larick advanced the purposes of the Harbison Trust, and that neither Burnell nor Larick had a legitimate claim to the funds. Neither Burnell, Larick, nor Thornes ever repaid the funds that Thornes misappropriated from the Harbison Trust account.

26.    Beginning in 2010, Thornes converted the Harbison Trust brokerage

account to a margin account to obtain margin funds.  Subsequently, he sold securities in the Harbison Trust brokerage account, without authorization, to generate additional funds to avoid a margin call and to cover additional transfers to Burnell.  Converting the Harbison Trust brokerage account to a margin account was inconsistent with the low risk tolerance for the account.

27.     Thornes knew or was reckless in not knowing that he did not have the authority to sell securities in the Harbison Trust account without the approval of the trustee.

28.     From December 1, 2010 through March 31, 2013, Thornes caused the Harbison Trust to pay the Firm $74,507 in margin interest, and $42,091 in brokerage commissions on securities transactions in the account, including sales conducted primarily to avoid a margin call.  As the sole owner of the Firm, Thornes benefited from these payments.

29.     Thornes also paid Doreen excessive fees for serving as the trustee of the Harbison Trust.  The will that established the Harbison Trust provided for a trustee fee equal to "one percent of the average net value of the principal of the trust estate during each calendar year for all ordinary services rendered by the trustee and to reasonable additional compensation for any extraordinary services rendered."  Nonetheless, even while the securities in the Harbison Trust account were being sold off, and the value of the trust assets rapidly declined, Thornes caused the Harbison Trust to pay Doreen a purported fee of $4,000 per month through March 2013.  Based on the value of the Harbison Trust account, Thornes overpaid Doreen $85,570 during the period from December 1, 2010 through March 31, 2013.  Doreen did not have a legitimate claim to those funds.

30.     As a result of Thornes' actions, the Harbison Trust account was depleted from $3 million in November 2010 to approximately $155,000 by April 2013, with minimal funds used for the educational purposes for which the trust was established.
///

## FIRST CLAIM FOR RELIEF

### FRAUD IN THE OFFER AND SALE OF SECURITIES

**Violations Of Section 17(a)(1) Of The Securities Act**

**(Against Thornes)**

31. The SEC realleges and incorporates by reference paragraphs 1 through 30 above.

32. Defendant Thornes, by engaging in the conduct described above, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, with scienter, employed devices, schemes, or artifices to defraud.

33. By engaging in the conduct described above, defendant Thornes violated, and unless restrained and enjoined will continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## SECOND CLAIM FOR RELIEF

### FRAUD IN CONNECTION WITH THE

### PURCHASE OR SALE OF SECURITIES

**Violations Of Section 10(b) Of The Exchange Act and**

**Rules 10b-5(a) and (c) Thereunder**

**(Against Thornes)**

34. The SEC realleges and incorporates by reference paragraphs 1 through 30 above.

35. Defendant Thornes, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

  a. employed devices, schemes, or artifices to defraud; or

  b. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

36.     By engaging in the conduct described above, defendant Thornes violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5(a) & (c).

**THIRD CLAIM FOR RELIEF**

**RELIEF DEFENDANTS RECEIVED ILL-GOTTEN GAINS**

**(Against All Relief Defendants)**

37.     The SEC realleges and incorporates by reference paragraphs 1 through 30 above.

38.     In the manner described above, each relief defendant received ill-gotten gains for which they gave no consideration and to which they have no legitimate claim.

**PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court:

**I.**

Issue findings of fact and conclusions of law that defendant Thornes committed the alleged violations.

**II.**

Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining defendant Thornes, and his agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**III.**

Order defendant Thornes to disgorge all ill-gotten gains from his illegal conduct, together with prejudgment interest thereon, and order relief defendants

Burnell, Larick, and Doreen to disgorge all ill-gotten gains from defendant Thornes'
illegal conduct to which the relief defendants do not have a legitimate claim, together
with prejudgment interest thereon.

### IV.

Order defendant Thornes to pay civil penalties under Section 20(d) of the
Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15
U.S.C. § 78u(d)(3).

### V.

Retain jurisdiction of this action in accordance with the principles of equity and
the Federal Rules of Civil Procedure in order to implement and carry out the terms of
all orders and decrees that may be entered, or to entertain any suitable application or
motion for additional relief within the jurisdiction of this Court.

### VI.

Grant such other and further relief as this Court may determine to be just and
necessary.

Dated:  August 4, 2014            */s/ David J. Van Havermaat*
David J. Van Havermaat
Attorney for Plaintiff
Securities and Exchange Commission