Kenneth M. Miller, State Bar No. 151874
kmiller@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700/Facsimile (949) 369-3701

Attorneys for Defendant
CHRISTOPHER BURNELL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>v.<br><br>JOHN THORNES,<br><br>          Defendant,<br>and<br><br>CHRISTOPHER BURNELL; KYLE LARICK; and DOREEN THORNES,<br><br>          Relief Defendants. | Case No. 5:14-cv-01598<br><br>**RELIEF DEFENDANT CHRISTOPHER BURNELL'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY PLAINTIFF SEC AGAINST RELIEF DEFENDANTS BURNELL, LARICK AND D. THORNES AND DECLARATION OF KENNETH M. MILLER IN SUPPORT THEREOF**<br><br>Date:     June 22, 2015<br>Time:    9:00 a.m.<br>Place:    Courtroom 850 (Roybal<br>            (Honorable R. Gary Klausner) |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..................................................................................................... 1

II. STATEMENT OF FACTS ....................................................................................... 1

III. ARGUMENT ............................................................................................................ 2

    A. The Motion Must Be Denied Because It Is Not Supported By Admissible Evidence, And The SEC Has Accordingly Failed To Meet Its Burden On Summary Judgment. ........................................................ 3

        1. Thornes's Prior Testimony Cannot Be Tested For Truthfulness And Must Be Stricken. ..................................................... 3

        2. The Prior Testimony Is Inadmissible Hearsay And Must Be Excluded. ................................................................................................ 5

    B. The Motion Must Be Denied As To Burnell Because He Has A Valid Claim To Any Money Received From Thornes And Therefore Is Not A Proper Relief Defendant. .................................................. 5

    C. The SEC Has Not Met Its Burden Of Presenting A Prima Facie Case That Burnell Received $3,071,112.90 From The Harbison Scholarship Trust And Schultz Trust From Thornes. .................................... 7

        1. The Schultz Trust. ................................................................................. 8

        2. The Harbison Scholarship Trust. .......................................................... 9

            a. Contested Transfer: December 10, 2010—Cashier's Check for $50,000. .................................................................... 9

            b. Contested Transfer: December 29, 2010—Cashier's Check for $100,000. .................................................................. 9

            c. Contested Transfer: January 13, 2011—Wire Transfer to Citibank, N.A. in the amount of $180,000 .......................... 10

            d. Contested Transfer: December 4, 2012—Cashier's Check for $2,842 to "CSU Fullerton Carlie Burnell" .............. 10

**TABLE OF CONTENTS:** (continued) **Page(s)**

       3. Pre-judgment Interest ........................................................................... 11

IV. CONCLUSION ................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179 (9th Cir. 1988) ........................... 2, 5

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................. 2, 3

Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F. 3d 1258 (9th Cir. 2000) ......................... 4, 8

Edmond v. Consumer Prot. Div. (In re Edmond), 934 F.2d 1304
    (4th Cir.1991) ............................................................................................................. 4

Janvey v. Adams, 588 F.3d 831 (5th Cir. 2009 ................................................................. 6

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ........................ 3

Nationwide Life Ins. Co. v. Richards, 541 F.3d 903 (9th Cir. 2008) ................................ 8

Orr v. Bank of Am., NT & SA, 285 F.3d 764 (9th Cir. 2002) ....................................... 2, 5

S.E.C. v. Graystone Nash, Inc., 25 F. 3d 187 (3d Cir. 1994) ............................................ 8

S.E.C. v. Ross, 504 F.3d 1130 (9th Cir. 2007) .................................................................. 6

UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing &
    Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.,
    48 F.3d 1465 (9th Cir. 1994) ..................................................................................... 2

United States v. $133,420.00 in U.S. Currency, 672 F.3d 629 (9th Cir. 2012) ............ 3, 4

United States v. Bahadar, 954 F. 2d 821 (2d Cir. 1992) .................................................. 5

U.S. Commodity Futures Trading Comm'n v. WeCorp, Inc., 848 F.
    Supp. 2d 1195 (D. Haw. 2012) ............................................................................... 5-6

**Statutes**

California Civil Code § 1622 ............................................................................................ 6

**Rules**

Federal Rules of Civil Procedure 56 ............................................................................. 2-3

Federal Rules of Evidence 801 ......................................................................................... 5

Federal Rules of Evidence 802 ......................................................................................... 5

Federal Rules of Evidence 804 ......................................................................................... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On August 4, 2014, the Securities and Exchange Commission ("SEC") brought a Complaint against John Thornes ("Thornes") for violations of the Federal Securities Laws ("Complaint"). The Complaint named Doreen Thornes ("D. Thornes"), Kyle Larick ("Larick"), and Chris Burnell ("Burnell") as relief defendants. On May 21, 2015, the SEC moved for summary judgment against the Relief Defendants. (SEC Motion for Summary Judgment ("Mot."), Doc. No. 41, at 1.) Burnell opposes the motion on the following grounds: (1) the Motion for Summary Judgment ("Motion") is not supported by admissible evidence; (2) there is a genuine factual dispute as to whether Burnell is a proper relief defendant; and (3) the SEC has not met its burden to show that Thornes transferred the sum of money alleged by the SEC to Burnell.

## II. STATEMENT OF FACTS

The Complaint alleges the following:

Thornes was the former owner of Thornes & Associates, Inc. Investment Securities ("Thornes & Associates"), a broker-dealer and investment adviser firm. (SEC Complaint ("Compl."), Doc. No. 1, ¶ 3.) Thornes allegedly misappropriated $4.4 million dollars from the Schultz Trust Account ("Schultz Trust"), of which Thornes was the trustee, and the Harbison Scholarship Trust, of which Thornes's mother was the trustee. (Compl. ¶ 3.) Thornes allegedly transferred these funds to the Relief Defendants. (Compl. ¶ 3.) The SEC commenced an investigation of Thornes & Associates ("Thornes & Associates Investigation").

As part of the Thornes & Associates Investigation, Thornes prepared a set of tables purporting to list transfers he made from the Schultz Trust and the Harbison Scholarship Trust to Burnell ("Transfer Tables"). (Declaration of Karen Matteson ("Matteson Decl."), Doc. No. 41-5, Ex. 13, Ex. 28.) On April 10, 2013, Thornes presented testimony to the SEC during the Thornes & Associates Investigation. (Matteson Decl., Ex. 1, Thornes Dep. 1, April 10, 2013.) Subsequently, the SEC attempted a follow-up deposition of Thornes in the

same investigation and Thornes invoked his privilege against incrimination under the Fifth Amendment to questions asked, including questions related to subjects he had previously answered. (Miller Decl., Ex. A, Thornes Dep. 2, November 5, 2013.)

The SEC alleges that Thornes transferred a total of $3,071,112.90 from the Schultz Trust and the Harbison Scholarship Trust to Burnell through wire transfers, cashier's checks payable to San Manuel Casino, a transfer to Larick, and a transfer to The Early Air Way. (Mot. at 4-5.) On September 2, 2014, Burnell answered the Complaint by asserting his Fifth Amendment privilege against self-incrimination. (Matteson Decl., Ex. 8, ¶ 3-38.) When deposed on August 29, 2013, Burnell responded to the SEC's questions by asserting his Fifth Amendment privilege. (Matteson Decl., Ex. 10.) Burnell submitted his initial disclosures. (Miller Decl. at ¶ 3.)

Before Thornes invoked his Fifth Amendment privilege, he repeatedly referred to any transfers of money to Burnell as loans. (Matteson Decl., Ex. 1 (Thornes Depo.), Ex. 13 (Transfer Table for Schultz Trust), Ex. 14 (Email Correspondence with Washington Mutual), Ex. 28 (Transfer Table for Harbison Scholarship Trust).

### III. ARGUMENT

Motion for summary judgment is proper when the moving party shows that there is no dispute as to any material facts and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A party who moves for summary judgment and bears the burden of proof on the issue at trial must establish a prima facie case on their motion. <u>UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1994). "**A trial court can only consider <u>admissible</u> evidence in ruling on a motion for summary judgment**." <u>Orr v. Bank of Am., NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002) (emphasis added); *see also* <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179, 1181 (9th Cir. 1988).

Once the moving party has met this burden, the party opposing summary judgment must "set forth specific facts showing there is a genuine issue for trial." <u>Id.</u>; Fed. R. Civ. P.

2

56(e). There is a genuine dispute of a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The opposing party's evidence, if supported by affidavits or other evidentiary material, must be regarded as true, and all reasonable inferences must be drawn in favor of the party opposing summary judgment. Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### A. The Motion Must Be Denied Because It Is Not Supported By Admissible Evidence, And The SEC Has Accordingly Failed To Meet Its Burden On Summary Judgment.

The Motion must be denied because it is based predominantly on Thornes's Prior Testimony, which must be stricken. Thornes's Prior Testimony should be excluded on two grounds: (1) By invoking the 5th amendment, Thornes presented evidence relating to this case without allowing any other party, including Burnell, to test the credibility of the evidence; and (2) Thornes's testimony is inadmissible hearsay and therefore cannot be considered in ruling upon a motion for summary judgment. Because Thornes's Prior Testimony may not be considered, the SEC has not met its burden and the Motion must be denied.

#### 1. Thornes's Prior Testimony Cannot Be Tested For Truthfulness And Must Be Stricken.

A court may strike testimony in a civil proceeding when a party provides testimony on a matter and then asserts the Fifth Amendment privilege to prevent further questioning on the subject. See United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 640-41 (9th Cir. 2012) (striking civil forfeiture claimant's interrogatory responses when claimant subsequently invoked the Fifth Amendment to avoid the government's questions regarding when and how the property was obtained). To allow the testimony to stand without allowing other parties to "test the veracity" impairs "the truth-seeking function of the judicial process." Id. at 642. "[T]he Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making

statements to support a summary judgment motion." Id. at 641 (quoting Edmond v. Consumer Prot. Div. (In re Edmond), 934 F.2d 1304, 1308 (4th Cir.1991)).

Here, the SEC's Motion for Summary Judgment against Burnell relies on Prior Testimony that has not been subject to truth testing by any of the Relief Defendants. On April 10, 2013, while investigating Thornes and Associates, the SEC solicited testimony from Thornes regarding loans to Burnell from the Harbison Scholarship Trust and the Schultz Trust. (Matteson Decl., Ex. 1, Thornes Dep. 1.) Thornes also prepared the Transfer Tables, two tables of alleged transfers to Burnell from the Schultz Trust and the Harbison Scholarship Trust, as part of his response to the SEC investigation of his company. (Matteson Decl., Ex. 13 and Ex. 28.) On November 5, 2013, the SEC attempted to depose Thornes a second time. (Miller Decl., Ex. 1, Thornes Dep. 2, at 283.) At the second deposition the SEC once again asked Thornes about money allegedly transferred to Burnell from the Harbison Scholarship Trust and the Schultz Trust (Miller Decl., Ex. A, Thornes Dep. 2, at 295:1-4; 296:6-10; 297:22-298:2; 301:11-19; 302:6-21.)   After introductory remarks, Thornes invoked the protection of the Fifth Amendment and did not answer any further questions. (Miller Decl., Ex. A, Thornes Dep. 2, at 287:13-19.)

While the SEC is the party offering the Prior Testimony and not Thornes, the principle is the same. The SEC seeks to collect over $3 million dollars from Burnell based on testimony that Burnell has not had the opportunity to test for truthfulness because of Thornes's invocation of the Fifth Amendment. Thornes, like Burnell, has a right to assert the protection of the Fifth Amendment in a civil case. See Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F. 3d 1258, 1267 (9th Cir. 2000) ("The Fifth Amendment's protections against self-incrimination would be undermined if . . . a party was penalized for exercising a constitutionally guaranteed right in the way that [Defendant] did.") However, presenting evidence and then hiding behind the safety of the Fifth Amendment is far more prejudicial than consistently invoking the privilege against self-incrimination without clouding the record with evidence that cannot be tested for truthfulness. Therefore, the Court should

strike all of the Prior Testimony offered by Thornes as the truthfulness of such testimony cannot be tested by parties that could be affected if the testimony were admitted.

### 2. The Prior Testimony Is Inadmissible Hearsay And Must Be Excluded.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr, 285 F. 3d at 773; Beyene, 854 F. 2d at 1181. Unless there is an applicable exception, out of court statements offered to prove the truth of the matter asserted are inadmissible. Fed. R. Evid. 801; Fed. R. Evid. 802; Orr, 285 F.3d at 778. If a declarant is unavailable, there are a limited number of applicable hearsay exceptions. A declarant is unavailable when the court rules he is exempt from testifying because of an applicable privilege. Fed. R. Evid. 804(a)(1); United States v. Bahadar, 954 F. 2d 821, 827 (2d Cir. 1992) (unavailability includes witnesses that refuse to testify because of a valid invocation of the Fifth Amendment).

Here, the declarant, Thornes, will most likely be unavailable at trial because he has asserted a valid Fifth Amendment privilege. Unless there is an applicable exception, his testimony would be inadmissible against Burnell at trial and therefore should not be considered when ruling on this Motion.

### B. The Motion Must Be Denied As To Burnell Because He Has A Valid Claim To Any Money Received From Thornes And Therefore Is Not A Proper Relief Defendant.

In addition to the foregoing, the Court should deny the SEC's Motion because (1) the SEC has not made a prima facie showing that Burnell is a proper relief defendant, and (2) in the event the Court finds that the SEC has met its initial burden, the Motion should be denied because there is a genuine dispute as to a material fact because there is more than sufficient evidence for a jury to find that Burnell is not a proper relief defendant.

To assert that Burnell is a proper relief defendant, the SEC must make a prima facie showing that Burnell "(1) received ill-gotten funds and (2) does not have a legitimate claim to those funds." U.S. Commodity Futures Trading Comm'n v. WeCorp, Inc., 848 F. Supp.

2d 1195, 1201 (D. Haw. 2012) (defendant was not a proper relief defendant because he had performed work giving him a legitimate claim to the contested funds); S.E.C. v. Ross, 504 F.3d 1130, 1144 (9th Cir. 2007). A debtor-creditor relationship will support a legitimate claim to funds. Janvey v. Adams, 588 F.3d 831, 835 (5th Cir. 2009).

The SEC cannot show that Burnell is a proper relief defendant because, to the extent that any money was transferred from the Schultz Trust or Harbison Scholarship Trust to Burnell, the record presents sufficient evidence to show that these transfers were loans and therefore Burnell had a legitimate claim to the funds as part of a debtor-creditor relationship. The SEC has not presented any evidence that the funds paid from the Harbison Scholarship Trust or the Schultz Trust were not loans to Burnell. At most, the SEC has made allusions to lack of writings or lack of specific terms in regards to the loans. (Mot. 5:22-27; 4:1-3; 4:1-5:1-6, 13-14.) See Cal. Civ. Code § 1622 (West 2015) (unless required by statute to be in writing, oral contracts are permissible).

On the other hand, there is evidence that shows Thornes consistently characterized any transfers to Burnell as loans:

- First, there are wire transfer receipts from the Harbison Scholarship Trust and Schultz Trust being wired to bank accounts allegedly under Burnell's control. (Declaration of Carol Shau ("Shau Decl."), Doc. No. 41-13, Ex. 2-7, 23). The wire transfer receipts include a section to designate the transaction purpose. (Shau Decl., Ex. 2-7, 23.) Of the seven wire transfer receipts presented, five wire transfer receipts show the purpose of the wire transfer was a "loan," "lending," or "short-term lending," and one receipt failed to state a transaction purpose. (Shau Decl., Ex. 3-6, 23.) Only one wire transfer receipt stated the purpose was "outside investment." (Shau Decl., Ex. 7.) These wire loan receipts rebut the SEC's assertion that the loans were entirely undocumented.

- Second, on June 28, 2011, there was email communication between Thornes and a Washington Mutual representative in which Thornes responds to the representative's inquiries about the trust accounts' activity by stating that

money transferred to Burnell was a loan with an anticipated return on investment of 15-20%. (Matteson Decl., Ex. 14).

- Third, in the event that Thornes's Prior Testimony is not stricken and is considered in this Motion, the Prior Testimony also refers to all of the alleged transfers as loans. (Matteson Decl., Ex. 1, Thornes Dep. 1, at 15, 21-23, 27, 55, 74.) Thornes refers to the earlier transactions as "bridge loans" and later transactions as "personal loans." Regardless of the type of loan, Thornes does not waiver that these transactions were loans.

- Fourth, if the Transfer Tables prepared by Thornes for the SEC during the investigation of Thornes & Associates purporting to catalog each alleged transfer to Burnell from the Schultz Trust or Harbison Scholarship Trust are admitted, each transfer is given a loan number, a principal amount, an interest rate, and a calculation of money due at the end of each year with interest calculated. (Matteson Decl., Ex. 13; Ex. 28.) The labels and treatment of the transfers supports a finding that to the extent that any of these transfers took place, they were loans.

In light the evidence presented, a reasonable jury could find that Burnell had a debtor-creditor relationship with Thornes and a legitimate claim to any funds allegedly transferred and thus is not a proper relief defendant.

### C. The SEC Has Not Met Its Burden Of Presenting A Prima Facie Case That Burnell Received $3,071,112.90 From The Harbison Scholarship Trust And Schultz Trust From Thornes.

In the event the Court finds that Burnell did not have a legitimate claim to the funds, the SEC has not made a prima facie showing that Burnell received $3,071,112.90 from Thornes. (Mot. at 4-5.)

///

///

///

7

### 1. The Schultz Trust.

The SEC claims that Burnell received $1,540,443.90 from the Schultz Trust. (Shau Decl., Ex. 43.) The SEC has not presented sufficient evidence to support at least $67,443.90 of this amount.

On August 20, 2012, Burnell allegedly received $67,443.90 from the Schultz Trust in the form of a wire transfer to The Early Way, LLC "purportedly to transfer Burnell's wife." (Mot. at 5.) The evidence in support of this theory that Burnell is liable for this amount is Thornes's Prior Testimony, which should be excluded for the reasons stated above, the SEC's assertion that Burnell's invocation of his Fifth Amendment privilege against self-incrimination creates a negative inference to all of his deposition and discovery responses, and an SEC accountant exhibit showing that money was transferred to The Early Way, LLC, but does not reflect that it was for Burnell's benefit. (Matteson Decl., Ex. 10; Mot. at 10-11; Shau Decl., Ex. 8.)

While a court may draw a negative inference in a civil case from a defendant's discovery response in which he asserts his Fifth Amendment privilege, the court has discretion and must examine each case to fashion a relief that balances the defendant's right to assert his privilege with the moving party's need for information. Nationwide Life Ins. Co. v. Richards, 541 F.3d 903, 912 (9th Cir. 2008) ("The tension between one party's Fifth Amendment rights and the other party's right to a fair proceeding is resolved by analyzing each instance where the adverse inference was drawn, or not drawn, on a case-by-case basis under the microscope of the circumstances of that particular civil litigation."); S.E.C. v. Graystone Nash, Inc., 25 F. 3d 187, 193-94 (3d Cir. 1994) ("Courts must bear in mind that when the government is a party in a civil case and also controls the decision as to whether criminal proceedings will be initiated, special consideration must be given to the plight of the party asserting the Fifth Amendment.") Furthermore, the moving party must present more evidence to support its assertion than a negative inference from Burnell's responses. Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1264 (9th Cir. 2000).

Here, the Court has not yet made a determination regarding how to address Burnell's invocation of the Fifth Amendment. Burnell has sought to postpone the civil trial until after any potential criminal investigations or charges have been resolved to avoid being uncooperative. (*See* Burnell Application for Reconsideration, Doc. No. 43.) At this stage, he has cooperated with the discovery process to the extent he is able while protecting his privilege against self-incrimination by submitting his initial disclosures, appearing at the scheduled deposition and submitting answers to the SEC's Complaint. (*See* Miller Decl. at ¶ 3; Matteson Decl., Ex. 10 (Burnell Dep.); Matteson Decl., Ex. 8 (Burnell Answer).) To grant a blanket negative presumption to all of Burnell's discovery answers would be excessive, especially in light of the SEC's ability to procure information from other sources. (Burnell Bank Records, Shau Decl., Ex. 2, 3, 4, 5, 6, 7.)

The SEC has presented insufficient evidence to show that Burnell received $67,443.90 from the Schultz Trust.

### 2. The Harbison Scholarship Trust.

The SEC claims that Burnell received $1,180,669.00 from the Harbison Scholarship Trust. The SEC has not presented sufficient evidence to support at least $332,842.00 of this amount.

#### a. Contested Transfer: December 10, 2010—Cashier's Check for $50,000.

The SEC seeks to recover $50,000 from a Cashier's Check written to Security Bank with Burnell's name printed on the Memo Line. (Shau Decl, Ex. 21). There is no evidence that Burnell received any of this money. The record does not reflect that a bank account under Burnell's control received this check or that it was cashed at San Manuel Casino by Burnell.

#### b. Contested Transfer: December 29, 2010—Cashier's Check for $100,000.

The SEC seeks to recover $100,000 from a Cashier's Check written to Security Bank with Burnell's name printed on the Memo Line. (Shau Decl, Ex. 22). There is no evidence

9

that this money was transferred to Burnell or that Burnell received these funds. There is no evidence in the record to support that a bank account under Burnell's control received this check or that he cashed it at San Manuel Casino.

### c. Contested Transfer: January 13, 2011—Wire Transfer to Citibank, N.A. in the amount of $180,000

The SEC seeks to hold Burnell liable for a $180,000 wire transfer that was purportedly submitted to a Citibank Bank Account ending in X4682. (Shau Decl., Ex. 23.) The wire transfer slip states that Burnell is the account holder, but there is no corroborating evidence that Burnell owns or controls this bank account. The SEC has presented no evidence that Burnell actually received these funds, either directly or indirectly.

### d. Contested Transfer: December 4, 2012—Cashier's Check for $2,842 to "CSU Fullerton Carlie Burnell"

On December 4, 2012, the Harbison Scholarship Trust wrote a cashier's check in the amount of $15,000 to Security Bank. (Shau Decl, Ex. 32, at 219.) There is a handwritten note stating, "To: Chris Burnell Re: Cashier's Check" (Shau Decl, Ex. 32, at 219.) The same day, $15,000 was deposited into John Thornes's Security Bank of California ending in X2436. (Shau Decl., Ex. 32, at 220-21.) Thornes then withdraws $11,362 in two cashier's checks: (1) $2,842 to CSUFullerton Carlie Burnell and (2) $8,500 to San Manuel Casino (Shau Decl., Ex. 32, at 224-25.) The SEC seeks to recover $11,362 from Burnell.

The cashier's check in the amount of $2,842 was not written to Burnell, but to CSU Fullerton. (Shau Decl., Ex. 32, 223-24.) Furthermore, of the $15,000 Cashier's Check written to Security Bank, $3,658 was left in Thornes's bank account, despite the fact there was a note that the $15,000 cashier's check went "to Chris Burnell." This raises further evidentiary questions regarding the cashier's checks in the amounts of $100,000 and $50,000 contested above when the only evidence that Burnell received the money is a note in the memo line bearing Burnell's name.

///

///

### 3. Pre-judgment Interest

To the extent the Court finds that pre-judgment interest is proper, it has been calculated based on Burnell being liable for $3,071,112.90. (Shau Decl., Ex. 44) As this amount is contested, consequently, the pre-judgment interest is also incorrect.

## IV. CONCLUSION

For the foregoing reasons, the SEC has not met its burden of proving a prima facie case that Burnell is a proper relief defendant and that he is liable for the amount claimed. As there is a genuine dispute as to material facts regarding these issues, Plaintiff SEC is not entitled to summary judgment and the Motion should be denied.

Dated: June 1, 2015

BIENERT, MILLER & KATZMAN, PLC

By: */s/ Kenneth M. Miller /s/*
    Kenneth M. Miller
    Attorneys for Defendant
    CHRISTOPHER BURNELL

# CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673.

On June 1, 2015, I served the document described as RELIEF DEFENDANT CHRISTOPHER BURNELL'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY PLAINTIFF SEC AGAINST RELIEF DEFENDANTS BURNELL, LARICK AND D. THORNES AND DECLARATION OF KENNETH M. MILLER IN SUPPORT THEREOF on the interested parties in this action as follows:

[X]  **X BY ELECTRONIC MAIL:** by electronically filing the foregoing with the Clerk of the District Court using its ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies said parties in this case:

| | |
|---|---|
| Karen L Matteson | mattesonk@sec.gov |
| David J Van Havermaat | vanhavermaatd@sec.gov |
| Ethan J Brown | ethan@ethanbrownlaw.com |
| David Philip Colella | dcolella@flsd.com |
| Jonathan Schwartz | nasdlaw@aol.com |

[X]  **BY MAIL** - I deposited such envelope in the mail at San Clemente, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Clemente, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

Eric C. Chase, Esq.
The Criminal Defense Group
4181 Sunswept Drive, Suite 100
Studio City, CA  91604
Attorneys for Relief Defendant Kyle W. Larick

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 1, 2015, at San Clemente, California.

*/s/ Coleen Grogan /s/*
Coleen Grogan

236755-1

12