JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 14-01598-RGK (SP) | Date | July 20, 2015 |
|---|---|---|---|
| Title | *SECURITIES AND EXCHANGE COMMISSION v. THORNES, et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order re: Relief Defendant Larick's Motion for Summary Judgment (DE 40); Plaintiff SEC's Motion for Summary Judgment (DE 41)

## I. INTRODUCTION

On August 4, 2014, the Securities and Exchange Commission ("SEC" or "Plaintiff") filed a Complaint naming John Thornes ("Thornes") as a defendant and Christopher Burnell ("Burnell"), Kyle Larick ("Larick"), and Doreen Thornes ("Ms. Thornes") as relief defendants (collectively, "Relief Defendants"). The Complaint contains two claims against Thornes: (1) Fraud in the Offer and Sale of Securities in violation of Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1); and (2) Fraud in Connection with the Purchase or Sale of Securities in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5(a), (c). The Complaint alleges one claim for Receipt of Ill-Gotten Gains against the three relief defendants.

On August 4, 2014, the SEC filed Thornes' Consent to Entry of Final Judgment. Among other things, the Proposed Final Judgment permanently restrains and enjoins Thornes from violating federal securities statutes and regulations, orders him to pay disgorgement in the amount of $4,366,790 plus prejudgment interest thereon in the amount of $278,539.94, and orders him to pay a civil penalty in the amount of $4,366,790. Thornes does not admit or deny the Complaint's allegations. On August 12, 2014, the Court accepted the consent agreement as filed, but declined to enter final judgment against Thornes while claims against the Relief Defendants remained unresolved.

On May 21, 2015, the SEC filed a Motion for Summary Judgment against the Relief Defendants. That same day, Larick filed his own Motion for Summary Judgment against the SEC. Both motions are

presently before the Court.

On July 17, 2015, the SEC filed two Consents to Entry of Final Judgment, signed by Burnell and Ms. Thornes, respectively. Thus, the SEC's Motion for Summary Judgment is **DENIED** as **moot** with regard to those two relief defendants.

For the following reasons, the Court **DENIES** the SEC's Motion for Summary Judgment against Larick, and **GRANTS** Larick's Motion for Summary Judgment.

## II.     FACTUAL BACKGROUND

The following is based on the parties' allegations and evidence. Larick met Burnell in approximately 2003 through their mutual involvement in a community youth soccer league. Sometime in early 2010, Burnell told Larick that he was earning high returns on investments by engaging in "hard money" lending, which involved short-term, high interest loans to small businesses. Burnell offered to allow Larick to get involved in one of his investments, which Larick did on April 5, 2010 by giving Burnell a cashier's check for $25,000 to invest on his behalf. In return, Burnell provided Larick with a promissory note providing for a return of principal along with $7,500 in interest within two weeks. About ten days later, Burnell gave Larick the promised funds.

Larick continued investing amounts as high as $65,000 with Burnell through the fall of 2010, with a number of these investments similarly guaranteed by promissory notes. While Larick received one additional payout, Burnell convinced Larick to "roll" the promised return on certain other investments into new investments.

In the fall of 2010, Larick introduced Burnell to his broker and longtime friend, Thornes, purportedly because Burnell stated that he needed to move a large sum of money. Thornes owned a registered broker-dealer and investment adviser firm, Thornes & Associates, Inc. Investment Securities ("Thornes & Associates"). Larick explained to Thornes the investments he had been making through Burnell as well as the rates of return.

Larick had begun looking for a vacation home to purchase with the expected proceeds of his investments, and in September 2010 he found such a home in Big Bear, California (the "Big Bear Property"). Larick opened escrow and made a down payment of $25,000, with the remainder due when escrow was scheduled to close in October 2010. Larick told Burnell that he needed the cash from his investments to complete the purchase; Burnell had informed him that the value of his principal investment had by that time grown to approximately $500,000. Burnell replied that Larick's investments had been rolled into new "hard money" loans, and were thus tied up. He gave further reasons why other funds could not be used to pay Larick back. Larick put another $5,000 down to extend escrow through November 2010.

With time growing short, Thornes informed Larick that he could "cover" the $800,000 for Burnell. The details of this transaction are subject to some dispute, though as explained below, this dispute is ultimately immaterial. Larick declares that Thornes loaned the funds to Burnell, who then directed that the funds be transferred to Larick as a return on his investments. During the SEC's investigation, Thornes testified that the funds were loaned to Larick, to be repaid by Burnell. In any event, Thornes ultimately transferred the funds to Larick's account with Thornes & Associates, and Larick then used the funds to purchase the Big Bear Property.

Thornes transferred these funds from the Harbison Trust Account, which he had a role in managing. The account had been created by the will of Thornes' family friend for the purpose of

funding scholarships. In order to free up funds to loan or invest, Thornes typically liquidated securities held by this account.

Larick continued to invest with Burnell, providing him with $300,000 in February 2011. A few weeks later, Larick wanted to purchase a car. With his funds again tied up, Thornes once more agreed to transfer the funds from the Harbison Trust Account, this time in the amount of $93,000. As with the earlier $800,000 transaction, Larick and Thornes characterize this transaction differently – Larick insists it was a loan to Burnell with payment directed to Larick, while Thornes testified that it was a loan to Larick to be repaid by Burnell. Larick used the funds to purchase a BMW.

### III.   JUDICIAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper only upon a showing that "there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such showing, the court may grant summary judgment "on all or part of the claim." *Id.*

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See id.*

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

### IV.   DISCUSSION

"A relief defendant, sometimes referred to as a 'nominal defendant,' has no ownership interest in the property that is the subject of litigation but may be joined in the lawsuit to aid the recovery of relief." *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009); *see also SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998). "A relief defendant is not accused of wrongdoing, but a federal court may order equitable relief against such a person where that person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds." *Janvey*, 588 F.3d at 834 (citing *Colello*, 139 F.3d at 677). With regard to the latter element, "relief defendants who have provided some form of valuable consideration in good faith in return for proceeds of fraud" have a legitimate claim to those proceeds, and thus "are beyond the reach of the district court's disgorgement remedy." *Commodity Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010).

Larick does not contest that he received ill-gotten funds. However, he argues that he has a legitimate claim to those funds.

Larick asserts that based upon the undisputed evidence, his receipt of funds from the Harbison Trust Account can only be fairly characterized in one of two ways, either of which shows that he has a legitimate claim to those funds. First, Larick argues that Thornes loaned the funds to Burnell, who then directed the transfer of loan proceeds to Larick as a return on his investments. Alternatively, Larick maintains that the transfer can be viewed as a loan to him, which Burnell promised to repay as a return on Larick's investment. The Court finds that the materially undisputed evidence supports both of these theories, and that under either one, Larick has a legitimate claim to the funds.

Larick presents evidence that is materially undisputed showing that as of the time he received $800,000 to purchase the Big Bear Property, he had invested $188,000 with Burnell. Burnell had only paid back $40,000 of the principal investment, along with some interest. Burnell represented to Larick that his principal investment had grown to $500,000. (Glennon Decl., Ex. 4 at 107:11-108:1; Larick Decl. ¶ 28.)

With regard to the transaction itself, Larick provides evidence that Thornes offered to loan Burnell $800,000 so he could "pay [Larick] back." (Larick Decl. ¶ 28; *see* Glennon Decl., Ex. 4 at 111:3-4 ("Mr. Thornes . . . told me that he could cover the $800,000 for Mr. Burnell.").) Larick declares that he communicated the proposed arrangement to Burnell, who agreed. Larick told Burnell to discuss the terms of the loan with Thornes, and subsequently heard from Thornes that the deal was done. (Larick Decl. ¶ 28.) Thornes transferred $800,000 to Larick's account with Thornes & Associates, and Larick then used the funds to purchase the Big Bear property. (*Id.* at ¶¶ 29-30.) In April 2013, apparently referring to this transaction as well the subsequent one for the purchase of a BMW, Burnell wrote to Larick, "With the house and car consider yourself paid . . . ." (*Id.* at ¶ 39, Ex. 22.)

These facts indicate that Thornes loaned the $800,000 to Burnell, who then directed that the funds be transferred to Larick as a return on his investments with Burnell. On this view of the facts, Larick was a good faith investor who provided valuable consideration for the funds, and thus has a legitimate claim to them. *See Walsh*, 618 F.3d at 226; *Janvey*, 588 F.3d at 834-35 (holding that investors in certificates of deposit which granted them certain rights and obligations had "a sufficient legitimate ownership interest to preclude treating [them] as relief defendants").

The SEC points to testimony by Thornes that the loan was to Larick and his wife from the Harbison Trust, to be repaid by Burnell. (*See* Glennon Decl., Ex. 3 at 152:14-153:19.) Yet even under this alternative view of the facts, Larick has a legitimate claim to the funds because he entered into a debtor-creditor relationship with the Harbison Trust. *See Janvey*, 588 F.3d at 834-35 (holding that "a debtor-creditor relationship . . . constitutes a sufficient legitimate ownership interest to preclude treating the [defendants] as relief defendants"); *SEC v. Founding Partners Capital Mgmt.*, 639 F. Supp. 2d 1291, 1294 (M.D. Fla. 2009) (holding the same where relief defendant received the loan proceeds pursuant to a written loan agreement). There is no evidence to suggest that Larick did not enter into the loan agreement in good faith.

The parties' characterizations of Larick's receipt of $93,000 for the purchase of a new car track their positions with respect to the $800,000 transaction. For the reasons just explained, under either characterization, Larick has a legitimate claim to the $93,000 as well.

Since the materially undisputed facts establish that Larick has a legitimate claim to the $893,000 he received from the Harbison Trust Account, he is not a proper relief defendant.

## V.     **EVIDENTIARY OBJECTIONS**

To the extent the Court has relied on evidence to which the parties have objected, those objections are overruled.

## VI.     CONCLUSION

For the foregoing reasons, the Court **DENIES** the SEC's Motion for Summary Judgment against Larick, and **GRANTS** Larick's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                                                                                                              **:**

**Initials of Preparer**